McCunn, J.
I must dissent in this case. This action was brought to recover, (1.) The cost of rolling one thousand one hundred gun barrels, which the plaintiffs claim they had, at the defendant’s request, procured to be rolled and worked from iron previously sold by them to him; (2.) The price • of thirteen tons of skelp iron, which they claim to have sold the defendant; and, (3.) The cost of rolling, coneseating, and annealing said thirteen tons of iron into gun barrels, which they also claim to have procured to be done at the defendant’s request.
Three questions are involved in this case.
First. Was the amount found by the court below, on the first cause of action, correct ?
Second. Was the learned justice right in finding, on the second cause of action, “ That, although the plaintiffs could not recover, under the contract between the parties, for fifty tons, yet he was justified in allowing for the value of the thirteen tons of skelp iron.”
Third. Was the court justified in finding that the defendant was responsible for the rolling, &c. of these thirteen tons of skelp iron into gun barrels ?
On a careful examination of the evidence touching these' *22 questions, I think the court erred in finding for the plaintiffs.
The learned justice found, that one thousand one hundred barrels made out of the five tons, were delivered by the plaintiffs to the defendant; out of which number-three hundred and twenty-five were returned as defective; and after deducting the value of the number so returned, allowed $741.20 as due to the plaintiffs from the defendant. But he did not allow for the iron, or for work expended by the defendant- on the barrels so returned, to the amount of $487.20, which should have been deducted out of the $741.20, leaving only the sum of $254 to be found due by the defendant to the plaintiffs, being the proper amount due on the first count. In this respect the court erred.
The next and principal question in this case, the disposition of which will, in my judgment, end the controversy, is, “ Did the sale of the thirteen tons of skelp gun iron, from the plaintiffs to the defendant, take place ?” I am clearly of- opinion it did not. The plaintiffs undertake to show that a sale of thirteen tons of iron did take place from their firm to the defendant; but, on a careful examination of all the testimony, it will be seen that such was not the case.
[The learned judge then proceeded to examine the testimony, to show that a prior order for fifty tons of iron skelps had been canceled by the parties, and proceeded.] In my mind, here the case should have ended. Because the complaint only asks, and the plaintiffs’ counsel, at the trial, only demanded, first, the value of the labor expended on the first five tons ; next, the value of thirteen tons delivered under the fifty ton contract, as part of the said contract; and, lastly, the value of the labor expended on said thirteen tons.
So that the court below made a mistake when it found *23 for the value of thirteen tons, separate and apart from the contract of fifty tons, and for work and labor expended thereon. The object of that contract was to protect the defendant from bad iron and unskillful workmanship; and to hold that these thirteen tons were not delivered under the fifty ton contract, and subject to its provisions, would be to deprive the defendant of the safeguards provided in the contract, and would be tantamount to compelling the defendant to take any and every trash of barrels the plaintiffs might deliver. The contract was made, and its stipulations, on the part of the plaintiffs and defendant, entered into, with the express purpose of providing against bad iron and unskillful workmanship, so as to enable Roberts to supply the government with muskets such as would pass inspection by government officers. The propriety of such a provision is shown by the fact that the barrels furnished from the thirteen tons of iron, as a whole, were nearly worthless. If that contract was annulled between the parties, what safeguard had the defendant against any imposition the plaintiffs might practice upon him in making these barrels ? Rone whatever.
[The learned judge then discussed the evidence, to show that there was no contract for the purchase of the thirteen tons, different from that for the fifty tons, and added.]
The letter of the 11th of October is clear on this point; and it conclusively shows that the plaintiffs, seeing the defendant would not take the barrels, sold and transferred them to Robinson, the defendant’s successor; and this theory is fully borne out by the letter of the defendant to the plaintiffs, in answer to one of the 11th of October. Until that time, the plaintiffs looked to Robinson for payment; and this letter was never answered. Indeed all the written evidence, as well as all the oral evidence, fastens *24 the responsibility for the thirteen tons on Bobinson ; and if Bobinson .had been solvent, I am inclined to believe this action would not have been brought against the defendant.
[The learned judge then compared the testimony of one of the plaintiffs with that of the defendant and others, and concluded that the whole of his evidence was of such a character as to throw grave doubts on its truth; that it was an effort to shift the responsibility of a debt upon a solvent person when the real debtor was insolvent. He also compared the testimony of such plaintiff respecting an order in writing given by the defendant in his presence, to Mr. Brown, with that of the latter ■ two and another witness, (Cameron,) and concluded that their testimony was clear, and without effort, while that of the plaintiffs was confused, and, apparently, fabricated; that other illustrations from the evidence could be offered to show the mistake made in rendering judgment for the plaintiffs. He then referred to affirmative evidence, to show that no contract but that for fifty tons was made, after that for the five, and thought that all the witnesses, both for the plaintiffs and defendant, tended that way; against this strong current stood only the testimony of one of the Footes; and that given in such a loose, hesitating manner, that it would be unsafe to found any judgment or-decree upon it.]
In disposing of this case, I have not touched the question as to whether the court below was justified in allowing the plaintiffs to recover for goods sold and delivered, and work and labor done and performed generally, under a complaint framed upon a special contract, and when no such claim for goods sold and delivered was insisted upon at the trial. My determination of'the'case on the merits, renders such an examination unnecessary.
*25 I am, therefore, of opinion that the judgment should be reversed, unless the plaintiffs consent to reduce the amount claimed by them to the sum of $254; in which event judgment should be affirmed for that sum, without costs.